**Rev. Dusty PRUITT, Captain, U.S.A.R., et al., Plaintiffs,**

v.

**Caspar WEINBERGER, Secretary of Defense, et al., Defendants.**

**No. CV 83–2035–WPG.**

United States District Court, C.D. California.

April 17, 1987.

Susan McGreivy, Fred Okrand, William G. Smith, ACLU Foundation of Southern California, Michael Wetherbee, Los Angeles, Cal., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., Robert C. Bonner, U.S. Atty., Eric A. Nobles, Asst. U.S. Atty., Los Angeles, Cal., Vincent M. Garvey, Stanley E. Alderson, Attys., Dept. of Justice, Civil Div., Washington, D.C., for defendants.

## MEMORANDUM OF DECISION

GRAY, District Judge.

The plaintiff was a captain in the United States Army Reserve until she was discharged, on July 19, 1986, on the ground that she was a homosexual. She filed this action seeking declaratory relief adjudging that Army Regulation 135–175 ("AR 135–175"), upon which her discharge was based, is unconstitutional because it violates the First Amendment, both facially and as applied to the plaintiff and to her right to privacy.

Since the filing of this action, the plaintiff has adequately exhausted her administrative remedies and now moves for summary judgment; the defendant has countered with a motion to dismiss the action; and both motions have been submitted to the Court for decision. The plaintiff's motion will be denied and the Motion to Dismiss granted.

*Factual Background*

On January 27, 1983, the plaintiff was the subject of an article published in the Los Angeles Times entitled *Pastor Resolves Gay, God Conflict,* which described her as a "lesbian and the pastor of a nondenominational Christian church ... whose congregation is 85% gay and lesbian." The article also reports that the plaintiff had twice gone through a marriage ceremony for homosexuals. As a result of the article, an investigation was initiated by the Army to determine whether or not it should suspend the plaintiff's scheduled promotion to major, revoke her security clearance, and ultimately remove her from the Army Reserve pursuant to AR 135–175. That regulation provides for separation of a member who has engaged in homosexual acts, has admitted that she is a homosexual as defined in the regulation, or has married or attempted to marry a person of the same sex. AR 135–175, § VII, ¶ 2–39. The regulation defines a homosexual as "a person, regardless of sex, who engages in, desires to engage in, or intends to engage in homosexual acts." AR 135–175, § VII, ¶ 2–38(a).

A formal hearing was conducted by an administrative board on September 7, 1985. The board concluded that separation was warranted based on an admission the plaintiff made in a letter to her commanding officer, wherein she acknowledged that she is a homosexual within the meaning of the subject regulation (Findings of Board of Officers, Summarized Proceedings of Officer Elimination Action, dated Sept. 7, 1985, at page 3). The board's recommendation was approved by the Commander, Sixth

Army, and accepted by the review authority at the Department of the Army level. Ms. Pruitt was honorably discharged from the reserve, effective July 19, 1986.

*Discussion*

The constitutionality of the discharge of a member of the Armed Forces because of *acts* of homosexuality has been upheld in *Beller v. Middendorf,* 632 F.2d 788 (9th Cir.1980). However, there is no showing that the present plaintiff has committed any such acts. Instead, her discharge stemmed from her acknowledgement that she is a homosexual, as defined in the subject regulation. This means that she "desires to engage in, or intends to engage in, homosexual acts." The plaintiff contends that this portion of the regulation is violative of the First Amendment because it calls for punishment solely on the basis of her assertion of her status rather than because of any conduct in which she engaged. I am unable to accept such an argument.

AR 135–175 sets out the policy under which the Army discharges homosexuals, as follows:

> Homosexuality is incompatible with military service. The presence in the military environment of persons who engage in homosexual conduct or who, by their statements, demonstrate a propensity to engage in homosexual conduct, seriously impairs the accomplishment of the military mission. The presence of such members adversely affects the ability of the armed forces to maintain discipline, good order, and morale; to foster mutual trust and confidence among members; to insure the integrity of the system of rank and command; to facilitate assignment and worldwide deployment of members who frequently must live and work under close conditions affording minimal privacy; to recruit and retain members of Armed Forces; to maintain the public acceptability of military service; and to prevent breaches of security." AR 135–175, § VII, ¶ 2–37(a).

In light of such policy, it makes little difference whether a person has committed homosexual acts, or would like to do so, or intends so to do. A person in one of the last two categories could reasonably be deemed to be just as incompatible with military service as one who engages in homosexual acts. Certainly, the morale factor could reasonably be considered to be the same, and the Army understandably would be apprehensive of the prospect that desire or intent would ripen into attempt or actual performance. The acknowledgement by the plaintiff that she is a homosexual is simply an admission that she comes within a classification of people whose presence in the Army is deemed by the Army to be incompatible with its above expressed goals.

It is not for this Court to assess the wisdom of the Army's policy here concerned. There is much to be said for the view expressed by Judge Terence T. Evans in *benShalom v. Secretary of Army,* 489 F.Supp. 964, 976 (E.D.Wis.1980):

> "The peculiar nature of Army life has always required the melding together of disparate personalities. For much of our history, the military's fear of racial tension kept black soldiers segregated from whites. Fear of sexual tensions, until very recently, kept the participation of female soldiers to a minimum. The vital mission of the Army has withstood these changes in racial and heterosexual standards. It should be able to similarly withstand any changes necessary to live without the regulation found to be offensive by the court."

However, the regulation held invalid in that case was much broader than the one here concerned, in that even a person that "evidences homosexual ... interest" could be, without more, subjected to discharge.

Judgment will be entered denying relief to the plaintiff and ordering the dismissal of the action.